2017 PA Super 412

| | |
|---|---|
| NICHOLAS DEL CIOTTO, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ROCCO DEL CIOTTO<br><br>Appellant<br><br>v.<br><br>THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENN HEALTH SYSTEM, UNIVERSITY OF PENN HEALTH SYSTEM, ROBERT CENTRONE, D.O., ELECTRONIC SECURITY SOLUTIONS, LLC AND JEFFREY MITCHELL, MARK TESTA, D.O., AND STEINGARD & TESTA MEDICAL ASSOCIATES, HCR MANORCARE, INC. AND HCR HEALTHCARE, LLC AND HEALTHCARE AND RETIREMENT CORPORATION OF AMERICA, INTERSTATE REALITY MANAGEMENT COMPANY, NORMA LOTTENGER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br>No. 2023 EDA 2016 |

Appeal from the Judgment Entered May 19, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2013 No. 00027
March Term, 2013 No. 0653

| | |
|---|---|
| NICHOLAS DEL CIOTTO, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ROCCO DEL CIOTTO<br><br>v.<br><br>THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENN HEALTH SYSTEM, UNIVERSITY OF PENN HEALTH SYSTEM, ROBERT CENTRONE, D.O., ELECTRONIC SECURITY SOLUTIONS, LLC AND JEFFREY MITCHELL, MARK TESTA, D.O., AND STEINGARD & TESTA MEDICAL ASSOCIATES, HCR MANORCARE, INC. AND HCR HEALTHCARE, LLC AND HEALTHCARE AND RETIREMENT | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A10016-17

CORPORATION OF AMERICA,
INTERSTATE REALITY MANAGEMENT
COMPANY, NORMA LOTTENGER

APPEAL OF: MARK TESTA, D.O., AND
STEINGARD & TESTA MEDICAL
ASSOCIATES

No. 2024 EDA 2016

Appeal from the Judgment Entered May 19, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2013 No. 00027
March Term, 2013 No. 000653

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

OPINION BY SOLANO, J.: **FILED DECEMBER 27, 2017**

At Docket No. 2023 EDA 2016, Plaintiff Nicholas Del Ciotto ("Del Ciotto"), individually and as administrator of the estate of Rocco Del Ciotto ("Decedent"), appeals from the judgment entered on the arbitration award in favor of Defendant Healthcare and Retirement Corporation of America, individually and doing business as HCR ManorCare, ManorCare, Inc., HCR ManorCare, Inc., ManorCare Health Services, LLC, and Wallingford Nursing and Rehabilitation Center–Wallingford PA, LLC, individually and doing business as Wallingford Nursing and Rehabilitation Center (collectively, "ManorCare"). At Docket No. 2024 EDA 2016, Defendants Mark Testa, D.O., and Steingard & Testa Medical Associates, P.C. (together, "Testa"), also appeal from that same judgment. Defendants Pennsylvania Hospital, The Pennsylvania Hospital of the University of Pennsylvania Health System, University of Pennsylvania Health System, and Trustees of the University of

- 2 -

Pennsylvania (collectively, "Penn") have not appealed.[1] We vacate the judgment, vacate the order entering judgment on the arbitration award, vacate in part the arbitration award to the extent it resolved Del Ciotto's wrongful death claim, affirm in part and reverse in part the order sustaining ManorCare's preliminary objections, and remand for further proceedings that may include a trial, if necessary.

Although the record exceeds 28,000 pages, many of the facts forming the basis for the underlying claims are undisputed.[2] Decedent had two children, Nicholas and Susan; it appears that Susan is estranged from the family. On March 1, 2011, Decedent was a tenant in a first-floor apartment when a fire broke out in the apartment above him, which activated that apartment's sprinkler system. The resulting flood caused portions of the ceiling of Decedent's apartment to fall on top of him. Decedent, then eighty-eight years old, was rushed to Pennsylvania Hospital, where he was treated for his injuries by Dr. Testa, among other doctors. Decedent's prior medical history included a diagnosis of dementia.

On March 28, 2011, Decedent was transferred from Pennsylvania Hospital to ManorCare's Wallingford Nursing and Rehabilitation Center. A

---

[1] Although it did not appeal, Penn filed a brief under Pa.R.A.P. 2137 in which it purports to join the arguments presented by Testa, which did appeal. The filing of such a brief is not a substitute for the filing of a notice of appeal, *see* Pa.R.A.P. 902, and, although we recognize Penn's right to file its brief as a party to this litigation, we do not enter any judgment in favor of Penn.

[2] The voluminous record consists mostly of pleadings, motions, and briefs. The docket through May 14, 2016 consumes 164 pages.

few weeks later, on April 19, 2011, an arbitration agreement regarding Decedent's care at that Center was signed, and that agreement forms the basis for the parties' dispute. At the very top of the first page of the agreement, it states:

> **VOLUNTARY AGREEMENT: If you do not accept this Agreement, the Patient will still be allowed to live in, and receive services in, this Center.**
>
> **ARBITRATION AGREEMENT ("AGREEMENT")**
>
> **BY ACCEPTING THIS AGREEMENT, THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE AND/OR A JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ THIS AGREEMENT CAREFULLY AND IN ITS ENTIRETY BEFORE ACCEPTING ITS TERMS.**
>
> This Agreement made on __3/28/2011__ (date) by and between the Parties, Patient __Rocco Delciotto__ and/or Patient's Legal Representative _____ (collectively referred to as "Patient"), and the Center _Wallingford Nursing and Rehab_, is an Agreement intended to require that Disputes be resolved by arbitration. The Patient's Legal Representative agrees that he is signing this Agreement as a Party, both in his representative and individual capacity.

Arbitration Agreement, 4/19/11, at 1, R. 319a (bold type in original). The date and the names of "Delciotto" and Wallingford were inserted in blanks on the page, but no name was inserted in the blank for the patient's legal representative.

The pertinent paragraphs of the agreement follow:

> **B. AGREEMENT TO ARBITRATE "DISPUTES"**: Any and all claims or controversies arising out of or *in any way* relating to this Agreement, this Admission Agreement or any of the Patient's stays at this Center, or any Center operated by any subsidiary of HCR-Manor Care, Inc., whether or not related to medical malpractice, including but not limited to disputes

- 4 -

regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, preemption, waiver, or any other defense to enforceability of this Agreement or the Admission Agreement, whether arising out of State or Federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation except as indicated, any claim based on Patients' Rights or a claim for unpaid Center charges), regardless of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration. Notwithstanding the above, nothing in this Agreement prevents the Patient from filing a grievance or complaint with the Center or appropriate governmental agency; from requesting an inspection of the Center from such agency; or from seeking review under any applicable federal, state or local law of any decision to involuntarily discharge or transfer the Patient from the Center.

. . .

**9. Final with Limited Rights to Review (Appeal)**: The Panel's award binds the Parties. The Parties have a limited right of review for only the express reasons allowed by the FAA.[3]

. . .

**F. OTHER PROVISIONS**:

. . .

**2. Opportunity to Review & Right to Consult with Attorney**: The Patient (if competent) and the Patient's Legal Representative acknowledge that the Patient and Legal Representative have each received a copy of this Agreement, and have had an opportunity to read it (or have it read to him/her) and ask questions about it before accepting it. Please read this Agreement very carefully and ask any questions that you have before signing it. Feel free to consult with an attorney of your choice before signing this Agreement.

. . .

---

[3] Federal Arbitration Act, 9 U.S.C. §§ 1-16.

**4. FAA**: The Parties hereby agree and intend that this Agreement, the Admission Agreement and the Patient's stays at the Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") in effect as of November 1, 2008 and federal case law interpreting such version of the FAA shall apply to this Agreement, shall preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any amendment to such version of the FAA is hereby expressly waived.

**5. Binding on Parties & Others**:  The Parties intend that this Agreement shall inure to the direct benefit of and bind the Center . . . and shall inure to the direct benefit of and bind the Patient (as defined herein), his/her successors, spouses, children, next of kin, guardians, administrators, legal representatives, responsible parties, assigns, agents, attorneys, health care proxies, health care surrogates, third Party beneficiaries, insurers, heirs, trustees, survivors and representatives, including the personal representatives or executors of his/her estate, any person whose claim is derived through or on behalf of the Patient or relates in any way to the Patient's stay(s) at this Center, or any person who previously assumed responsibility for providing Patient with necessary services such as food, shelter, clothing, or medicine, and any person who executed this Agreement or the Admission Agreement.

Arbitration Agreement at 1-3, R. 319a-21a (bold type and italics in original).

The signature block at the end of the Agreement was set forth as follows:

**BY SIGNING BELOW, THE PARTIES CONFIRM THAT EACH OF THEM HAS READ <u>ALL FOUR (4) PAGES OF THIS AGREEMENT</u> AND UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO A TRIAL BEFORE A JUDGE OR JURY AND THAT EACH OF THEM CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT.**

| PATIENT: | PATIENT'S LEGAL REPRESENTATIVE: |
|---|---|
| _____ | _____ |
| Printed Name (Date) | Printed Name          (Date) |
| _____ | _____ |
| Signature of Patient | Signature of Patient's Legal Representative[1] in his/her Representative capacity |
| | _____ |
| | Signature of Patient's Legal Representative in his/her Individual capacity |
| **CENTER REPRESENTATIVE** | |

_____
Signature of Center Representative

[1] Patient's Legal Representative should sign on <u>both lines</u> above containing the phrase "Patient's Legal Representative."

Arbitration Agreement at 4, R. 322a (bold type and underlining in original). The Agreement contains a signature in the block for the "Center Representative." In the "patient" signature block, "Rocco Del Ciotto 4-19-11" is printed on the line for "Printed Name" and "Rocco Del Ciotto" is handwritten in cursive on the line for "Signature of Patient." In the signature block for "Patient's Legal Representative," "N. Del Ciotto 4-19-11" is printed on the line for "Printed Name" and "N. Del Ciotto" is written in cursive above the line for "Signature of Patient's Legal Representative[] in his/her Representative capacity." The line above "Signature of Patient's Legal Representative in his/her Individual capacity" was left blank. ***Id.***

During Decedent's first few months at ManorCare, he was diagnosed with various ailments. On September 16, 2011, Decedent was transferred to Crozer Medical Center, where he was treated for sepsis and released on September 23, 2011. Crozer again treated Decedent for sepsis on

November 12, 2011, and Decedent returned to ManorCare on November 21, 2011. On January 4, 2012, Decedent was admitted to Taylor Hospital and treated for multiple ailments. On February 4, 2012, Decedent died from, among other causes, sepsis.

In 2013, Del Ciotto filed a civil action in the Court of Common Pleas of Philadelphia County (Mar. T. 2013, No. 27), in which he sought damages under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301, and the Survival Act, *id.* § 8302,[4] from numerous defendants associated with the apartment fire and Decedent's medical treatment, including ManorCare. After a series of preliminary objections, nine amended complaints, joinders, dismissals, and settlement of the claims against the defendants allegedly associated with the fire, the sole remaining medical treatment defendant was Testa, which filed a cross-claim against ManorCare, and Penn.

_____

[4] "At common law, there was no recovery for wrongful death and the right of action for personal injuries whether or not suit had been commenced before death did not survive the death of an injured person." ***Incollingo v. Ewing***, 282 A.2d 206, 226 (Pa. 1971). To fix that lack of remedies, the Legislature created wrongful death and survival actions. "An action for wrongful death may be brought by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages . . . . The damages recovered are not part of decedent's estate, but rather are compensation to individual members of the family for their loss." ***Tulewicz v. Southeastern Pa. Transp. Auth.***, 606 A.2d 427, 431 (Pa. 1992). "A survival action, on the other hand, is not a new cause of action but one which merely continues in the decedent's personal representatives the right of action which accrued to the deceased at common law because of the tort. The damages here are measured by the pecuniary loss to decedent." ***Id.*** (internal brackets, quotation marks, and citations omitted); ***see also Dubose v. Quinlan***, ___ A.3d ___, ___, 2017 WL 5616235, *9 (Pa. 2017) ("a survival action is not an independent cause of action, but a continuation of a cause of action that accrued to the decedent").

At about the same time as he filed his first suit, Del Ciotto also filed a second action under the Wrongful Death and Survival Acts in the Court of Common Pleas of Philadelphia County (Mar. T. 2013, No. 653), in which he sought damages from various defendants for medical and nursing home malpractice. Eventually, after much litigation, including thirteen amended complaints, the remaining defendants included ManorCare and Penn, which filed a cross-claim against ManorCare.[5] On June 26, 2013, the court ordered both lawsuits consolidated "for all purposes." Order, 6/26/13.

The parties conducted discovery, and ManorCare served Del Ciotto with a request for documents, including "All arbitration/mediation agreements executed by Rocco Del Ciotto or his representative(s) relating to his admission to any long-term facilities, healthcare facilities or hospitals within the last ten (10) years." Arb.-Related Req. for Prod. of Docs., 10/10/13, at ¶ 4, R. 519a.[6] In response, Del Ciotto answered, "None, other than the Wallingford Arbitration Agreement at issue in this case." Del Ciotto's Resp. to ManorCare's Arb.-Related Req. for Prod. of Docs., R. 531a.[7]

---

[5] Neither the ninth amended complaint at Mar. T. 2013, No. 27, nor the thirteenth amended complaint at Mar. T. 2013, No. 653, raised claims challenging the validity of the Arbitration Agreement.

[6] The discovery request was attached as an exhibit to ManorCare's reply to Del Ciotto's response to ManorCare's petition to compel arbitration, which is discussed *infra*.

[7] The response was attached as an exhibit to Del Ciotto's sur-reply to ManorCare's petition to compel arbitration. Ex. B to Del Ciotto's Sur-Reply to ManorCare's Reply to Del Ciotto's Resp. to ManorCare's Pet. to Compel Arb., 4/25/14.

ManorCare similarly requested all powers of attorney signed by Decedent, to which Del Ciotto responded, "none." *Id.*

Meanwhile, in response to Del Ciotto's twelfth amended complaint, ManorCare filed a petition to compel arbitration, alleging, among other things:

> 3. On or about April 19, 2011, Mr. Del Ciotto and his son, Nicholas Del Ciotto, the Plaintiff and Administrator of his father's Estate, signed an Arbitration Agreement. A true and correct copy of the Arbitration Agreement is attached hereto and marked as Exhibit "B". Nicholas Del Ciotto is the sole Plaintiff and beneficiary in this matter.

ManorCare's Pet. to Compel Arb., 3/21/14, at ¶ 3, R. 355a. The petition attached various exhibits, including documents that purportedly established the existence of a power of attorney permitting Del Ciotto to act on Decedent's behalf. *Id.* at ¶ 10, R. 356a. ManorCare averred:

> 10. Based on the records attached, the undisputed evidence is that the resident's son, Nicholas Del Ciotto, the Plaintiff herein, held Power of Attorney on his father's behalf. (See, Exhibit "C", a March 29, 2011 Wallingford Social Services Progress Note that indicates that Nicholas Del Ciotto had a POA; Exhibit "D" for a true and correct copy of a January 30, 2012 Consent for blood transfusion at Taylor Hospital that was *signed by "Nick Del Ciotto son/POA"* (emphasis added); and Exhibit "E", containing a true and correct copy of a January 31, 2012 Taylor Hospital Operative Report, which indicates that a long discussion was had with Mr. Del Ciotto's family, "particularly actually his son Nick *who is his power of attorney* [...]" (emphasis added), Exhibit "E" also includes a Discharge Planning sheet, which has written, "*son is POA*") (emphasis added).

*Id.* (emphases and alterations in original). ManorCare's petition did not request a hearing. It attached two suggested orders: the first would grant the petition, and the second was in the form of a rule to show cause that

- 10 -

would provide for a hearing at the court's discretion. Rule to Show Cause Order, R. 352a.

On April 14, 2014, Del Ciotto responded with two filings — an opposition to the petition to compel arbitration and a thirteenth amended complaint. In the opposition to the petition to compel arbitration, Del Ciotto averred the following in response to Paragraphs 3 and 10:

> 3. Admitted only that Nick Del Ciotto signed the Arbitration Agreement and signed his father's name, as . . . Rocco Del Ciotto was too physically and cognitively compromised to read, understand or sign the writing.
>
> . . .
>
> 10. Denied. It is specifically denied that there was a written Power of Attorney given by Rocco Del Ciotto to his son Nick Del Ciotto. Further, Defendants' references to a suggestion[] of same in the medical record are impermissible hearsay and incompetent evidence, with some references relating to irrelevant subsequent time periods, inapplicable to the time of the Arbitration Agreement. Moreover, Defendants have not explained why, if there was, in fact, a written Power of Attorney, they have not, pursuant to the Rules of Civil Procedure, attached a copy of the alleged contractual writing upon which they are relying. Strict proof is demanded.

Del Ciotto's Resp. and Opp'n to Pet. to Compel Arb., 4/14/14, at ¶¶ 3, 10, R. 415a-16a. The response was signed by one of Del Ciotto's counsel, Blake Berenbaum, and it appended two signed verifications, one by another of Del Ciotto's lawyers, Jacob Snyder, and the other by Del Ciotto himself.[8]

---

[8] Snyder's verification read:

> I, JACOB N. SNYDER, ESQUIRE, verify that the statements made in the foregoing Response and Opposition to Petition to Compel

*(Footnote Continued Next Page)*

- 11 -

In a brief in support of his response, Del Ciotto similarly conceded that he had signed Decedent's name, but he contended that because Decedent was not competent to sign and Del Ciotto did not have a power of attorney, the arbitration agreement was invalid. Mem. of Law in Support of Del Ciotto's Resp. and Opp'n to Pet. to Compel Arb., 4/14/14, at 5, 7-12, R. 422a, 424a-29a. Del Ciotto also contended that the arbitration agreement was not signed voluntarily because ManorCare pressures families to sign. *Id.* at 5-6, R. 422a-23a. Del Ciotto asserted that the various documents referenced by ManorCare were flawed and that the arbitration agreement was unenforceable because it was a contract of adhesion. *Id.* at 18-21, R. 435a-38a. Finally, Del Ciotto asserted that even if the arbitration agreement was valid, arbitration should proceed only for the survival action and not for the wrongful death claim because Del Ciotto did not sign in his individual capacity. *Id.* at 21-22, R. 438a-39a. Del Ciotto made no argument about

*(Footnote Continued)* ──────────

Arbitration of Defendants are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Del Ciotto's verification read:

I verify that the statements made in the foregoing writing and any attachments thereto are true and correct to the best of my knowledge, information and belief. I understand that false statements therein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Del Ciotto signed the verification as "Nicholas Del Ciotto, Administrator of the Estate of Rocco J. Del Ciotto." Both verifications appear in the certified record following the brief that was filed with Del Ciotto's response.

- 12 -

whether the scope of any power of attorney precluded him from signing a document on Decedent's behalf or about whether the arbitration agreement was limited to acts or omissions after the date it was signed, April 19, 2011.

In his thirteenth amended complaint, Del Ciotto alleged as part of the wrongful death count that he is "the only child of Rocco Del Ciotto" and "**solely** claims all damages under the Wrongful Death Act." Del Ciotto's Thirteenth Am. Compl. at ¶ 84, R. 251a (emphasis in original).

On May 1, 2014, ManorCare filed preliminary objections to the thirteenth amended complaint, in which it included a Paragraph 3 and a Paragraph 10 that were identical to Paragraphs 3 and 10 of ManorCare's petition to compel arbitration. ManorCare's Prelim. Objs. to Del Ciotto's Thirteenth Am. Compl., 5/1/14, at ¶¶ 3, 10, R. 297a-98a. ManorCare also attached various exhibits that allegedly referenced Del Ciotto's power of attorney. *See id.*

On May 2, 2014, the trial court issued a rule to show cause instructing Del Ciotto to produce any power of attorney signed by Decedent. The rule was returnable on June 9, 2014. The docket reflects no relevant activity around June 9, 2014, and reveals that no pleadings were filed between May 30, 2014, and June 17, 2014. However, on April 25, 2014, shortly before the court issued its rule, Del Ciotto responded to a prior request by ManorCare for copies of all powers of attorney by stating that none exist.

***See*** Ex. B to Plaintiff's Sur-Reply to Petition to Compel Arbitration, 4/25/14.[9]

On May 22, 2014, Del Ciotto filed a response to ManorCare's preliminary objections, in which Del Ciotto averred the following in response to the paragraphs that included Paragraph 3:

> 2-4. Denied. The Complaint and alleged Arbitration Agreement are writings which speak[] for themselves. Further, on March 21, 2014 Moving Defendants filed a Petition to Compel Arbitration, to which Plaintiffs filed a Response on April 14, 2014, after which Moving Defendants filed a Reply on April 23, 2014, followed by Plaintiff's Sur-Reply filed on April 25, 2014, and on May 2, 2014 this Court entered a Order on scheduling a hearing on Defendants' Petition to Compel Arbitration to take place on June 9, 2014. Therefore, Defendants' Preliminary Objections regarding Arbitration are redundant as the Court is presently addressing this issue.

Del Ciotto's Resp. and Opp'n to ManorCare's Prelim Objs., 5/22/14, at ¶ 2-4 (unpaginated). Thus, in response to identical Paragraphs 3 in ManorCare's petition to compel arbitration and preliminary objections, Del Ciotto proffered two substantively different responses: an admission in its reply to the petition on April 14, 2014, followed by an undetailed "Denied" in his response to the preliminary objections on May 22, 2014. Del Ciotto had not

---

[9] In its appellate brief, ManorCare informs us that in June 2015, after judgment was entered by the trial court, a third party produced a copy of a document signed by Decedent that bestowed power-of-attorney authority on Del Ciotto, and ManorCare attaches a copy of that document to its brief. Because that document was never made a part of the trial court record in this case, we may not consider it. ***Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co.*** 126 A.3d 1010, 1019 n.9 (Pa. Super. 2015) (*en banc*); ***accord Erie Ins. Exchange v. Moore***, ___ A.3d ___, ___, 2017 WL 5623350, at *4 n.2, *6 & n.10 (Pa. Super. Nov. 22, 2017). ManorCare filed a motion with the trial court to make the power of attorney part of the certified record, but the trial court denied that motion. Order, 5/1/17.

requested, and the court had not granted, permission for him to withdraw his April 14, 2014 admission, and Del Ciotto's denial did not try to reconcile that answer with his admission. Del Ciotto's response to the preliminary objections was verified by Snyder, but the certified record does not contain a verification by Del Ciotto himself.

Del Ciotto's response to paragraphs of the preliminary objections containing Paragraph 10 was substantially similar to his response to Paragraphs 2-4. *See* Del Ciotto's Resp. and Opp'n to ManorCare's Prelim Objs., 5/22/14, ¶ 9-16. Del Ciotto's brief in support of his opposition to the preliminary objections did not directly address the various documents ManorCare had attached under Paragraph 10, although it referenced Del Ciotto's prior filings challenging the documents' admissibility or evidentiary value. Del Ciotto's Mem. of Law in Supp. of its Resp. and Opp'n to ManorCare's Prelim Objs., 5/22/14, at 6.

In further filings, ManorCare and Del Ciotto contested whether discovery was necessary to resolve the questions regarding the arbitration petition. They filed supplemental briefs attaching documents and deposition testimony in support of their respective positions on the existence of a power of attorney. Among other things, ManorCare attached deposition testimony that Decedent had two children, Nicholas and Susan. Ex. C to ManorCare's Suppl. Mem. of Law in Supp. of ManorCare's Pet. to Compel Arb., 7/11/14, R. 550a. Other than ManorCare's proposed rule to show

cause order, neither party requested an evidentiary hearing before the trial court on the petition to compel arbitration.

Eventually, on December 5, 2014, the trial court sustained ManorCare's preliminary objections and ordered that all of Del Ciotto's claims against ManorCare proceed to arbitration. Order, 12/5/14. The court's order did not include any reasoning for its ruling. The court marked ManorCare's substantially identical petition to compel arbitration as moot. Docket, Mar. T. 2013, No. 653, 12/5/14, 10:09 a.m.

On January 5, 2015, Del Ciotto filed a motion for reconsideration of the court's order sending the case to arbitration, which Testa and Penn joined. The motion claimed that when Attorney Snyder prepared the response to the petition to compel arbitration, he "erroneously represented that Plaintiff Nicholas Del Ciotto signed the Arbitration Agreement and signed his father's name." Del Ciotto's Mot. for Reconsideration, 1/5/15, at ¶ 6, R. 580a. The motion further averred that after counsel obtained a copy of the Arbitration Agreement (on a date that was not specified), he sent it to Del Ciotto, who then denied signing it and claimed that his signature on the document was forged. *Id.* ¶¶ 7-8. The motion related that at a deposition on July 25, 2014, Del Ciotto testified that he thought his wife Lisa signed the Arbitration Agreement. *Id.* ¶ 9; *see id.*, Ex. E (copy of Del Ciotto Dep., pp. 245-51, R. 602a-08a, in which Del Ciotto testified that if Lisa signed the agreement, she did not have his permission to do so, and in which he stated that he verified the response to the petition to compel arbitration without

reading the document or having it explained to him).  It further related that at a deposition on November 8, 2014, Lisa Del Ciotto denied signing the Arbitration Agreement.  Del Ciotto's Mot. for Reconsideration, 1/5/15, at ¶ 10, R. 581a; **see id.**, Ex. F (copy of Lisa Del Ciotto Dep., pp. 249-52, R. 610a, in which she denied signing the agreement).  The content of the reconsideration motion was verified by Del Ciotto's counsel, but not by Del Ciotto.  The trial court denied the motion for reconsideration on February 12, 2015.  Order, 2/12/15, R. 634a.[10]

The parties did not immediately proceed to arbitration, but engaged in further motion practice before the trial court.  Eventually, ManorCare filed a motion to compel scheduling of the arbitration.  Del Ciotto, Penn, and Testa opposed the motion.  On September 17, 2015, the trial court granted ManorCare's motion.  Order, 9/17/15, R. 700a.[11]

The arbitration was held on January 27-29, 2015, before Allan H. Gordon, Esquire, and on February 2, 2016, the arbitrator entered an award

---

[10] At the time he moved for reconsideration, Del Ciotto also filed a notice of appeal, which was docketed in this Court at No. 261 EDA 2015.  This Court quashed the appeal as interlocutory on March 9, 2015.  On that same day, Del Ciotto filed another appeal from the denial of his motion for reconsideration.  That appeal was docketed in this Court at No. 890 EDA 2015.  ManorCare filed a motion to quash that appeal, and this Court granted that motion on May 26, 2015.

[11] Del Ciotto, Penn, and Testa moved to certify the trial court's order for appellate review, but the trial court denied that motion.  Del Ciotto, Penn, and Testa filed petitions for review in this Court, and we denied those petitions.

in favor of ManorCare. The award did not set forth any findings of fact or conclusions of law.

On April 26, 2016, ManorCare filed a motion to enter judgment on the arbitration award. Penn and Testa opposed that motion on the ground that they had outstanding cross-claims pending against ManorCare. *See* Testa's Resp. in Opp'n to ManorCare's Mot. for Entry of J. on Arb. Award, 5/17/16, at ¶ 5, R. 730a; Testa's Mem. of Law in Opp'n to ManorCare's Mot. for Entry of J. at 3-4 (unpaginated), R. 734a-35a. Del Ciotto opposed the motion on the ground that the arbitration agreement was "unenforceable" and that the wrongful death claim was not subject to arbitration. Del Ciotto's Resp. and Opp'n to ManorCare's Pet. to Enter Judgment on the Arb. Award, 5/18/16, at ¶ 3, R. 739a; Del Ciotto's Mem. of Law in Supp. of Del Ciotto's Resp. and Opp'n to ManorCare's Pet. to Enter Judgment on the Arb. Award, 5/18/16, at 3, 11-12, R. 741a, 749a-50a. Del Ciotto did not argue that the arbitration agreement was invalid due to a limited power of attorney or that the agreement was limited to acts or omissions occurring after April 19, 2011, the date it was executed.

On May 19, 2016, the court granted the motion to enter judgment, and judgment was entered the next day. The judgment stated: "**JUDGMENT IS ENTERED UPON THE FEBRUARY 2, 2016 Arbitration Award** issued in this matter in favor of the Manor Care Defendants . . . and against Plaintiff." Order, 5/19/16, R. 752a (bold type and capitalization in original).

On June 20, 2016, Testa and Penn filed a motion to strike, open, or vacate judgment. Testa argued, among other things, that entry of judgment was premature because it prejudiced Testa's cross-claim against ManorCare and the ability to contend that ManorCare alone was liable. Testa's Mot. to Strike, Open or Vacate Entry of J. in Favor of ManorCare, 5/20/16, at ¶ 21, R. 759a; Testa's Mem. of Law in Supp. of Testa's Mot. to Strike, Open or Vacate Entry of J. in Favor of ManorCare, at 8-9 (unpaginated), R. 768a-69a. The trial court never ruled on the motion to strike, open, or vacate the judgment.

Also on June 20, 2016, Testa and Del Ciotto filed these appeals from the entry of judgment. Penn did not appeal.

On June 21, 2016, Del Ciotto filed a motion for reconsideration, which the trial court denied on June 23, 2016. Subsequently, the court stayed the entire action pending this Court's resolution of the outstanding appeals.

On July 15, 2016, ManorCare filed a motion asking this Court to quash the appeals for lack of jurisdiction. On September 9, 2016, we denied that motion without prejudice to ManorCare's right to re-raise the jurisdictional issue in its appellate brief.

On September 8, 2016, the trial court issued an opinion pursuant to Appellate Rule 1925(a). The opinion focused mainly on whether the Arbitration Agreement applied to both the wrongful death and survival claims in the case. The court extensively discussed this Court's decision in *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013),

*appeal denied*, 86 A.3d 233 (Pa.), *cert. denied*, 134 S. Ct. 2890 (2014), in which we held that even though a decedent signed an arbitration agreement, wrongful death claimants who were not signatories to that agreement were not contractually bound to arbitrate their wrongful death claims. Trial Ct. Op., 9/8/16, at 4-5. The court then stated:

> The case before the court had significant factual differences from *Pisano*. This case presented both wrongful death and survival claims, and therefore implicated Pa.R.C.P. 213(e). Mr. Del Ciotto signed the arbitration agreement both individually and in his representative capacity, the survival claims. The claims of decedent before his death which survive his death, must be remanded to arbitration.
>
> . . .
>
> Herein [Nicholas] Del Ciotto[] signed the arbitration agreement in both his individual capacity and his capacity as attorney-in-fact for his father. The Arbitration Agreement states: "The Patient[']s Legal Representative agrees that he is signing this Agreement as a Party, both in his representative and individual capacity." When he signed the agreement, he bound the decedent and the decedent's survival claims to arbitration. Mr. Del Ciotto as a signatory to the agreement and the sole beneficiary under the wrongful death cause of action bound himself as well. All claims were governed by the arbitration agreement he signed.

*Id.* at 5-8 (footnote omitted). The trial court did not otherwise discuss issues regarding the validity of the Arbitration Agreement, whether the agreement applied before April 19, 2011, or the effect the judgment would have on Testa's outstanding cross-claim against ManorCare.

In his appellate brief, Del Ciotto now argues the following three issues:

> [1. Del Ciotto's] survival claim against Manor Care should not have been submitted to arbitration because neither the deceased nor his son signed the Arbitration Agreement. Even if the

- 20 -

signatures are genuine, [Decedent] was incompetent, and [Nicholas Del Ciotto] had no authority.

[2. Del Ciotto's] actions for damages under the Wrongful Death Act should not have been submitted to arbitration.

[3.] Even if the Arbitration Agreement was legally effective, it was signed on April 19, 2011, so all acts or omissions prior to that date are not subject to it.

Del Ciotto's Brief at i-ii.[12]  Testa raises the following four issues:

1.    Should a judgment entered on an arbitration award be reversed where there was no enforceable arbitration agreement, and the trial court's order compelling arbitration was an abuse of discretion and was not supported by substantial evidence?

2.    Should a judgment entered on an arbitration award be reversed where the trial court's order compelling arbitration of wrongful death claims was an abuse of discretion and was not supported by substantial evidence?

3.    Should a judgment entered on an arbitration award be reversed where the arbitration — even if it had been proper — involved only one defendant, and entering judgment before trial severely prejudiced the cross-claims of other defendants who were not parties to the arbitration?

4.    Was the trial court's order entering judgment on an arbitration award properly appealed in accordance with Pennsylvania's Statutory Arbitration Act and/or the analogous statute governing common law arbitration, and [A]ppellate Rule 311(a)(8)?

Testa's Brief at 4.  Because the issues overlap, we discuss the two appeals together.

---

[12] We quote the headings in the argument section of Del Ciotto's appellate brief because they concisely summarize Del Ciotto's issues and subsume the more detailed questions listed in his brief's statement of questions presented.

All parties agree that the applicable standard of review is that applicable to an order resolving a petition to compel arbitration.[13]   Del Ciotto's Brief at 24; Testa's Brief at 15; ManorCare's Brief at 2.  In **Patton v. Hanover Ins. Co.**, 612 A.2d 517 (Pa. Super. 1992), we stated:

> [I]t is clear that the question of whether an agreement to arbitrate exists is one which the lower court must ultimately address once the issue is raised pursuant to 42 Pa.C.S.A. § 7304 or § 7314(a)(1)(v).   Once [a party has] petitioned the lower court to compel arbitration and [the opposing party has] denied the existence of an agreement to arbitrate, the lower court was required to "proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party.   Otherwise the application [to compel arbitration] shall be denied." 42 Pa.C.S.A. § 7304(a).   Clearly, once the question has been determined adversely by the lower court, we will be permitted to review that decision in a timely appeal.

**Id.** at 519.   As an appellate court, our standard of review of an order deciding a petition to compel "is limited to determining whether the trial court's findings are supported by substantial evidence and whether it abused its discretion[.]"  **Quiles v. Fin. Exch. Co.**, 879 A.2d 281, 283 n.3 (Pa. Super. 2005) (citing **Goldstein v. Depository Trust Co.**, 717 A.2d 1063, 1065-66 (Pa. Super. 1998), **appeal denied**, 736 A.2d 605 (Pa. 1999)).

### Jurisdiction

Before addressing the merits issues raised by the parties, we must resolve whether we have jurisdiction to consider this appeal.   In its brief,

---

[13] Given the issues raised, the parties do not claim that the appropriate standard of review is that for an order resolving a motion to confirm an arbitration award.

ManorCare has renewed its contention that we lack jurisdiction, and Testa presents this question as the fourth of its listed issues.

*Jurisdiction over Interlocutory Arbitration Orders*

In most cases, our jurisdiction extends only to appeals from final orders, which are defined as orders disposing of all claims against all parties. **See** Pa.R.A.P. 341(b)(1). ManorCare correctly asserts that this appeal is not from a final order because the arbitration award that forms the basis for the judgment in this case resolved only Del Ciotto's claims against ManorCare and not its claims against Testa and Penn or the parties' cross-claims. ManorCare's Brief at 27. ManorCare acknowledges that Section 7320(a)(6) of the Uniform Arbitration Act, 42 Pa. C.S. § 7320(a)(6),[14] provides that "[a]n appeal may be taken from . . . [a] final judgment or decree of a court

---

[14] We recently explained:

> Pennsylvania makes available two statutory schemes for arbitration of cases not filed in court. One, the Uniform Arbitration Act, 42 Pa. C.S. §§ 7301-7320, governs arbitrations under agreements that "expressly provide[]" that they are subject to that Act "or any other similar statute." 42 Pa. C.S. § 7302(a). All other arbitration agreements are "conclusively presumed" to be governed by what the Judicial Code calls "common law arbitration" under 42 Pa. C.S. §§ 7341-7342. **See Moscatiello** [**v. Hilliard**, 939 A.2d 325, 327 (Pa. 2007)].

**Weinar v. Lex**, ___ A.3d ___, 2017 WL 6395862, at *5 (Pa. Super. 2017). The judgment entered in this case did not specify which of these two arbitration schemes was the authority for its entry, but for present purposes it does not matter because the "common law" statute, 42 Pa. C.S. § 7342(a), provides that, with one exception not applicable here, the appeal provisions in Section 7320 of the Uniform Act also apply to appeals from common-law arbitrations.

entered pursuant to" an arbitration statute, [15] but contends that the reference in this provision to a "final judgment" means that the statute does not authorize an appeal from an interlocutory arbitration judgment like that in this case. ManorCare's Brief at 27.

ManorCare's argument overlooks recent amendments to Rule 311 of the Rules of Appellate Procedure that specifically authorize interlocutory arbitration appeals like this one. As amended in 2015 (effective April 2016), Rule 311(a) provides:

> An appeal may be taken as of right and **without reference to Pa.R.A.P. 341(c)** from:
>
> . . .

---

[15] Section 7320(a) states:

> **General rule. —** An appeal may be taken from:
>
> (1) A court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration).
>
> (2) A court order granting an application to stay arbitration made under section 7304(b).
>
> (3) A court order confirming or denying confirmation of an award.
>
> (4) A court order modifying or correcting an award.
>
> (5) A court order vacating an award without directing a rehearing.
>
> (6) A final judgment or decree of a court entered pursuant to the provisions of this subchapter.

42 Pa. C.S. § 7320(a).

(8) *. . .* An order that is made final or appealable by statute or general rule, **even though the order does not dispose of all claims and of all parties**.

Pa.R.A.P. 311(a)(8) (emphases added). The Official Note to this provision states that it is intended to address "orders that are procedurally interlocutory [but are] made appealable by statute." As the Supreme Court explained in *Malanchuk v. Tsimura*, 137 A.3d 1283, 1284 n.3 (Pa. 2016), "appeals from orders that do not dispose of all parties and all claims denominated as final orders by statute were converted into interlocutory appeals as of right under Rule 311(a)(8)." Thus, under Rule 311(a)(8), an order made appealable by a statute such as the Arbitration Act is immediately appealable "without reference" to a determination of finality under Rule 341 and, more specifically, "even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8).

The drafters of the 2015 amendments to Rule 311(a)(8) had arbitration orders in mind when they drafted the amendments, and they added a section to Rule 311's Official Note that makes clear that interlocutory orders entered under Section 7320(a) of the arbitration statute are immediately appealable under Rule 311. Recognizing that Section 7320(a) authorizes appeals from six types of arbitration orders, including "final judgments" under Section 7320(a)(6), the Note states:

> **All six types of arbitration orders identified in 42 Pa.C.S. § 7320(a) are immediately appealable as of right.** Differing principles govern these orders, some of which are interlocutory and some of which are final.

- 25 -

. . .

- . . . **If an order is appealable under 42 Pa.C.S. § 7320(a) . . . (6)** because it is final, that is, the order disposes of all claims and of all parties, *see* Pa.R.A.P. 341(b), failure to appeal immediately waives all issues. **If the order does not dispose of all claims or of all parties, then the order is interlocutory. An aggrieved party may appeal such an order immediately under Pa.R.A.P. 311(a)(8)** or challenge the order on appeal from the final judgment.

Pa.R.A.P. 311, Official Note (emphases added). This allowance of an immediate appeal from an arbitration order despite the presence of other unresolved claims in a case is consistent with an overarching policy derived from federal law to foster arbitration even if doing so results in piecemeal litigation. As the Supreme Court recently observed in *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016) —

[T]he prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [U.S. Supreme] Court requires, as a matter of law, adjudication in separate forums.

*Taylor*, 147 A.3d at 507 (holding that state rule of civil procedure requiring consolidation of wrongful death and survival actions is preempted by Federal Arbitration Act if survival claim is arbitrable). Thus, the fact that Del Ciotto has outstanding unresolved claims against both Testa and Penn and that there are unresolved cross-claims among the parties does not render the judgments in this case unappealable.

## *Whether Testa Is an Aggrieved Party*

Apart from its argument that the appeals are interlocutory, ManorCare contends that Testa may not appeal because he is not an aggrieved party under the arbitration agreement between Del Ciotto and ManorCare. ManorCare's Brief at 28. ManorCare argues that Testa cannot establish a "substantial, direct, and immediate" interest in this appeal because his arguments are based on mere speculation that the arbitrator's decision may harm his ability to establish in his cross-claim that ManorCare alone is liable for Decedent's injuries. *Id.* at 28-29.

Under Pennsylvania law, an appeal may be taken by a "party who is aggrieved by an appealable order." Pa.R.A.P. 501. The Supreme Court has set forth the following guidelines to meet this requirement:

> [I]n Pennsylvania, a party must be aggrieved in order to possess standing to pursue litigation. Aggrievability is obtained by having a substantial, direct, and immediate interest in proceedings or litigation. When the standards for substantiality, directness, and immediacy are readily met, the inquiry into aggrievability, and therefore standing, ends. Should, however, a party's immediate interest not be apparent, a zone of interests analysis may (and should) be employed to assist a court in determining whether a party has been sufficiently aggrieved, and therefore has standing.

*Johnson v. Am. Standard*, 8 A.3d 318, 333 (Pa. 2010); *see also In re Jackson Trust*, ___ A.3d ___, 2017 WL 5150950, at *8-*9 (Pa. Super. 2017). "[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance — there must be some discernible adverse effect to some interest other than the abstract interest of all citizens

in having others comply with the law." ***Wm. Penn Parking Garage, Inc. v. City of Pittsburgh***, 346 A.2d 269, 282 (Pa. 1975). "The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." ***Id.*** (footnote omitted). "[I]t is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote." ***Id.*** at 283.

Here, Testa claims to be aggrieved by the arbitration judgment because the judgment may have a preclusive effect in proceedings on his cross-claim against ManorCare. In ***Taylor***, our Supreme Court observed that the law of the Commonwealth regarding "the preclusive effect of an arbitration award upon judicial proceedings" is unsettled:

> [A]lthough the appellate courts of the Commonwealth have held that "a judicially confirmed private arbitration award will have collateral estoppel effect, even in favor of non-parties to the arbitration, if the arbitrator actually and necessarily decided the issue sought to be foreclosed and the party against whom estoppel is invoked had full incentive and opportunity to litigate the matter," ***Frog, Switch & Mfg. Co. v. Pa. Human Relations Comm'n***, 885 A.2d 655, 661 (Pa. Cmwlth. 2005), we have not addressed this question. Notably, when the United States Supreme Court [in ***Dean Witter Reynolds, Inc. v. Byrd***, 470 U.S. 213, 222 (1985),] considered whether courts should resolve arbitrable pendent claims when a non-arbitrable claim is before it, in order to avoid the possible collateral estoppel effect of the arbitration proceeding in a subsequent court proceeding, the Court acknowledged that the preclusive effect of arbitration proceedings in such circumstances was not well-settled.

***Taylor***, 147 A.3d at 511-12 (footnote omitted). In light of this unsettled state of the law, we agree with Testa that the arbitration award could impact

his interests. Although Del Ciotto contended that both ManorCare and Testa were responsible for Decedent's injuries, the arbitrator found in favor of ManorCare and against Del Ciotto. ManorCare now argues that the effect of this decision on Testa's cross-claim is too speculative to make Testa "aggrieved" by it, but ManorCare does not disclaim an intention to assert that the arbitration judgment is binding on Testa and governs recovery in this case. While the success of any preclusion argument against Testa is speculative, the fact that the arbitration judgment makes Testa subject to such an argument presents a substantial, direct, and immediate threat to Testa's ability to recover on its cross-claim that is sufficient to make Testa aggrieved by the entry of judgment on the arbitration award.[16]

In addition, Testa points out that ManorCare takes the position that, apart from any preclusion argument, it will be necessary to inform the jury of the arbitration judgment in the future proceedings involving the other parties to the case. If, as Testa contends, the judgment was improperly entered, it will have an adverse and improper effect on those future

---

[16] We recognize that we eventually hold in this opinion that the effect of the arbitration judgment on Testa's cross-claim is not a sufficiently ripe issue for us to decide at this stage of the case. The fact that an issue is not ripe does not mean that a party asserting the issue is insufficiently aggrieved to present the issue on appeal, however. **See generally Yocum v. Commonwealth**, 161 A.3d 228, 234 (Pa. 2017) (discussing differences between standing and ripeness doctrines). Moreover, we decide in favor of Testa on one of his other issues, relating to the wrongful death claim, which may have a more direct effect on any judgment regarding Testa.

proceedings, to Testa's detriment. For this reason too, Testa is entitled to appeal to contest the validity of the judgment.

**Whether Del Ciotto is Bound by the Arbitration Agreement**

In their first issues, Del Ciotto and Testa contend that the Arbitration Agreement is not valid and binding and that the judgment entered on the basis of the Agreement therefore is invalid.

Del Ciotto's main argument relates to the signatures on the document. The Agreement's signature block contains signatures that purport to be those of Decedent and of "N. Del Ciotto," who signed as Decedent's representative. Del Ciotto contends that Decedent did not sign the agreement, and, due to his dementia, was not competent to do so. Del Ciotto further contends that the "N. Del Ciotto" signature is not his (he claims he never signs using only his first initial), and that, even if he had signed the document, there is no proof that he did so pursuant to a power of attorney authorizing him to do so. Del Ciotto contends that the signatures of Decedent and "N. Del Ciotto" look like they were made by the same person and that they are forgeries. Testa makes similar arguments and also emphasizes "inconsistencies" within the Agreement (such as the similarities in the signatures and the different dates at the beginning of the Agreement and in its signature block). Both Del Ciotto and Testa contend that the trial court erred in enforcing the Arbitration Agreement without holding a hearing to resolve the factual issues that their contentions raised.

ManorCare counters that Del Ciotto is bound by the admission that he signed the agreement, which he included in his response to the motion to compel arbitration. It relies on documents submitted in connection with that motion to show that Del Ciotto had the power to act on Decedent's behalf. ManorCare contends that the evidence was sufficient to permit the trial court to conclude that the Arbitration Agreement was valid and enforceable, so that the court did not err in compelling arbitration under it.

The trial court did not extensively discuss its reasons for concluding that a valid arbitration agreement exists. The court stated that Del Ciotto "signed the arbitration agreement in both his individual capacity and his capacity as attorney-in-fact for his father" and noted that the Agreement provided that "The Patient[']s Legal Representative agrees that he is signing this Agreement as a Party, both in his representative and individual capacity." Trial Ct. Op. at 7. The court concluded:

> When [Del Ciotto] signed the agreement, he bound the decedent and the decedent's survival claims to arbitration. Mr. Del Ciotto as a signatory to the agreement and the sole beneficiary under the wrongful death cause of action bound himself as well. All claims were governed by the arbitration agreement he signed.

Trial Ct. Op. at 7-8 (footnote omitted). The court thus appeared to find that, despite the parties' various disputes about the issue, the signatures on the Agreement were valid and made with sufficient authority to make them binding.

The trial court reached these conclusions without holding a factual hearing. No party requested such a hearing, and we conclude that none was

required. The governing statute is Section 7304 of the Uniform Arbitration Act, which apples both to Uniform Act arbitrations and "common law" arbitrations. *See* 42 Pa. C.S. § 7342(a) (making Section 7304 applicable to common law arbitrations). Section 7304(a) provides:

> **Compelling arbitration. —** On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

42 Pa. C.S. § 7304(a).

In ***Schwarz v. Wells Fargo Advisors, LLC***, 58 A.3d 1270 (Pa. Super. 2012), the defendants filed a motion to compel arbitration and the plaintiff denied the existence of an agreement. 58 A.3d at 1273. The trial court "proceeded 'summarily'" and then "ordered the parties to proceed with the arbitration." *Id.* This Court held that the trial court "was not required to hold a hearing as § 7304 directs the trial court to proceed 'summarily' to determine whether an agreement exists." *Id.* We explained:

> [Section 7304] provides no guidance as to the procedure a trial court should employ in "summarily" determining whether an agreement to arbitrate exits. While the statute['s] language affords no basis for concluding that a hearing is always required, one may be necessary in some cases. . . . The inquiry on appeal is "limited to determining whether the trial court's findings are supported by substantial evidence and whether it abused its discretion" in ruling on the petition to compel arbitration[; t]he trial court proceeding under § 7304 must therefore gather enough evidence to facilitate appellate review.

*Id.* at 1273 n.1 (quoting *Quiles*, 879 A.2d at 283 n.3). In our discussion, we cited *Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.*, 824 A.2d 1223, 1227 (Pa. Super. 2003), in which we remanded for a hearing on the enforceability of an arbitration agreement because the record did not contain "substantial evidence" from which we could discern whether conditions precedent set forth in the agreement had been satisfied. *Schwarz*, 58 A.3d at 1273 n.1.

In determining whether "substantial evidence" exists, a trial court may rely on a party's judicial admissions. In *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696 (Pa. Super. 2003), *appeal denied*, 845 A.2d 818 (Pa. 2004), we explained:

> Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party. *Nasim v. Shamrock Welding Supply Co.*, 387 Pa. Super. 225, 563 A.2d 1266, 1267 (1989) ("It is well established that a judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission."). Judicial admissions are deemed true and cannot be contradicted by the admitting party. If there is some support in the record for the truth of an averment, the trial court abuses its discretion if it disregards the admission. Such averments are binding on a party whether admitted by counsel or the client. Such admissions are considered conclusive in the cause of action in which they are made — and any appeals thereof, . . . — and the opposing party need not offer further evidence to prove the fact admitted.
>
> For an averment to qualify as a judicial admission, it must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law. The fact must have been unequivocally

> admitted and not be merely one interpretation of the statement that is purported to be a judicial admission.

831 A.2d at 712-13 (most citations omitted); *accord Tops Apparel Mfg. Co. v. Rothman*, 244 A.2d 436, 438 n.8 (Pa. 1968) ("Pennsylvania has followed this rule since *Wills v. Kane*, 2 Grant 60, 63 (Pa. 1853), where it was insisted: 'When a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice'").

Here, the trial court was presented with an arbitration agreement that, on its face, showed that it had been signed by both Decedent and by Del Ciotto as his representative. When ManorCare petitioned to compel arbitration under the agreement, Del Ciotto admitted that he signed the agreement and that he signed his father's name because Decedent "was too physically and cognitively compromised to" do so. Del Ciotto's Resp. and Opp'n to Pet. to Compel Arb., 4/14/14, at ¶ 3, R. 415a. He verified his response subject to criminal penalties for making an unsworn falsification to authorities. Although Del Ciotto later filed a denial of that same fact, he did not personally verify that denial and provided no factual basis for making it. *See* Del Ciotto's Resp. and Opp'n to ManorCare's Prelim Objs., 5/22/14, at ¶ 2-4. Del Ciotto never moved to retract his admission before the trial court acted on the petition to compel arbitration, and the admission undoubtedly was relevant evidence that the court was entitled to consider. Indeed, the admission was "deemed true" and "[could] not be contradicted by the

admitting party." ***John B. Conomos***, 831 A.2d at 712. When Del Ciotto tried to retreat from the admission in moving for reconsideration of the trial court's decision, it was too late. The trial court was free to continue to rely on Del Ciotto's earlier admission, particularly given that Del Ciotto did not personally verify the contents of the reconsideration motion.

With respect to Del Ciotto's argument that there was insufficient proof of his authority to sign the agreement, the trial court again was free to rule "summarily" on the basis of the record placed before it. Although no power of attorney was produced by any party, ManorCare did produce several documents suggesting that Del Ciotto was authorized to act on Decedent's behalf. ***See*** ManorCare's Prelim. Objs. to Del Ciotto's Thirteenth Am. Compl. at ¶ 10, R. 298a. Del Ciotto responded by challenging the probity of those documents. Del Ciotto's Resp. and Opp'n to ManorCare's Prelim Objs. at ¶¶ 9-16; ***see also*** Del Ciotto's Resp. and Opp'n to Pet. to Compel Arb., 4/14/14, at ¶¶ 3, 10, R. 415a-16a. But Del Ciotto did not present any clear evidence of his own to show that he lacked authority to sign the agreement. Moreover, Del Ciotto's admission that he signed the agreement as his father's representative was relevant evidence supporting Del Ciotto's apparent authority to do so. The record showed that Del Ciotto had taken other actions on his father's behalf, such as having Decedent admitted to ManorCare's facility.

In light of the fact that the trial court was not required to hold an evidentiary hearing under Section 7304 and instead could proceed

"summarily" on the basis of the evidence before it, we cannot conclude that the trial court abused its discretion by deciding that Del Ciotto had authority to sign. We note that Del Ciotto not only did not ask for a hearing on this issue, but was adamant in insisting that the record was clear enough that no discovery was needed to resolve it. **See** Del Ciotto's Sur-Reply in Opp'n to Pet. to Compel Arb., 4/25/14, at 1-7, R. 521a-27a. Faced with a statutory mandate to quickly resolve the petition to compel arbitration, we see no basis to disturb the trial court's decision.[17]

### Application of Agreement to Wrongful Death Claim

Each appellant's second issue challenges the trial court's holding that the Arbitration Agreement required arbitration not only of the Estate's survival claim, but also of Del Ciotto's claim for the wrongful death of Decedent.

In **Pisano**, we held that a wrongful death claim is not subject to arbitration unless the decedent's relatives who are the wrongful death claimants signed the relevant arbitration agreement. We explained —

---

[17] Our conclusion with respect to Appellants' other arguments regarding the validity of the Agreement is similar. Any internal inconsistencies within the document were not sufficient to compel the trial court to find it invalid. The inconsistency regarding the dates is readily explained by the fact that the date at the beginning of the Agreement is the date of Decedent's admission to the facility, which is the date as of when ManorCare contends the Agreement is effective, even though the Agreement was not signed until several days later. Del Ciotto's argument that there needed to be a factual exploration of the scope of his authority to act on his father's behalf under any power of attorney that might exist was not preserved in the trial court prior to the court's ruling.

> The survival action has its genesis in the decedent's injury, not his death. The recovery of damages stems from the rights of action possessed by the decedent at the time of death. In contrast, wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate. This action is designed only to deal with the economic effect of the decedent's death upon the specified family members.

*Pisano*, 77 A.3d at 658-59 (ellipses and citation omitted); *see also* Wrongful Death Act, 42 Pa. C.S. § 8301(b) (stating wrongful death action exists only for the "spouse, children or parents of the deceased"). Thus, as the Supreme Court later summarized our holding, "because wrongful death actions are not derivative of the decedent's rights, the wrongful death beneficiaries were not bound by an arbitration agreement executed by the decedent." *Taylor*, 147 A.3d at 495 (citing *Pisano*, 77 A.3d at 660-61); *see also Taylor*, 147 A.3d at 495-96 ("an arbitration agreement signed by the decedent or his or her authorized representative is not binding upon non-signatory wrongful death beneficiaries, and they cannot be compelled to litigate their claims in arbitration"); *Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 494 (Pa. Super. 2016) (*en banc*) (stating, "A non-signatory wrongful death claimant . . . cannot be compelled to present his claim to an arbitrator since he has not consented to arbitration and since he possesses an independent, non-derivative right to air his claim in the forum of his choice"), *appeal granted on other grounds*, 168 A.3d 1283 (Pa. 2017).[18]

---

[18] The question on which our Supreme Court granted the petition for
*(Footnote Continued Next Page)*

Del Ciotto and Testa argue that **Pisano** controls here and that because Del Ciotto did not sign the Arbitration Agreement in his individual capacity, he is not personally bound by it and does not have to arbitrate his wrongful death claim. ManorCare counters that the Arbitration Agreement should be construed to bind Del Ciotto individually. The trial court accepted this view, holding that Del Ciotto "signed the arbitration agreement in both his individual capacity and his capacity as attorney-in-fact for his father." Trial Ct. Op. at 7.

We agree that Del Ciotto and Testa are entitled to relief on this issue. The trial court erred in holding that Del Ciotto signed the Agreement in his individual capacity and bound himself as an individual. The Agreement's signature block had a place for the "Signature of Patient's Legal Representative in his/her Individual Capacity," but Del Ciotto did not sign on that line. Although a footnote at the bottom of the signature block instructed that the patient's legal representative "should sign on both lines . . . containing the phrase 'Patient's Legal Representative,'" Arbitration Agreement at 4, R. 322a (underlining in original), Del Ciotto disregarded that instruction.

*(Footnote Continued)* ────────────

allowance of an appeal in **Valentino** does not relate to arbitration, but relates to whether a decedent's waiver of liability form stating that the decedent assumed all risks of participation in a sports event precluded wrongful death recovery by the decedent's heirs. **See Valentino**, 168 A.3d at 1283-84.

ManorCare contends that the blank signature line does not matter because the Agreement states, "The Patient's Legal Representative agrees that he is signing this Agreement as a Party, both in his representative and individual capacity." ManorCare's Brief at 21-25 (citing Arbitration Agreement, 4/19/11, at 1, R. 319a). The trial court's opinion also placed emphasis on this language. *See* Trial Ct. Op. at 7. But by not signing on the Patient Representative's "Individual Capacity" line, Del Ciotto made clear that he did **not** agree that he was signing as a party in his individual capacity and that the quoted sentence of the Agreement did not apply to him. ManorCare argues that we should enforce the quoted language because the clause made Del Ciotto "aware of the rights he was waiving." ManorCare Brief at 21. To the contrary, because the quoted language informed Del Ciotto that he would be waiving those rights **if** he signed in his "Individual Capacity," we are compelled to give effect to the fact that Del Ciotto declined to agree to that language when he elected not to sign on the "Individual Capacity" line.

For similar reasons, we reject ManorCare's reliance on the Agreement's statement that it is intended to "bind" the Patient's "next of kin," "legal representatives," "heirs," "survivors," and "any person whose claim is derived through or on behalf of the Patient or relates in any way to the Patient's stay(s) at this Center." *See* ManorCare's Brief at 21-22, 24 (citing Arbitration Agreement, 4/19/11, at 3 ¶ F.5., R. 321a). Where, as here, the signer signs only in a "Representative capacity" and not in an "Individual

Capacity," the listed persons are bound only as the patient's representatives, and not with respect to their personal individual rights. Otherwise, the separate lines asking signers to sign separately in their representative and individual capacities are meaningless. We decline to hold that a signature line is meaningless.

Del Ciotto also argues that the agreement does not bind his estranged sister Susan, who also has a right to file a wrongful death claim and who did not sign the Arbitration Agreement. ManorCare calls this argument "a red herring" because Del Ciotto's complaint (in its many iterations) asserted that Del Ciotto "**solely** claims all damages under the Wrongful Death Act." Del Ciotto's Brief at 25 (quoting Del Ciotto's Thirteenth Am. Compl. at ¶ 84, R. 251a (emphasis in original)). ManorCare cites Del Ciotto's deposition testimony that his sister was estranged from Decedent, and it maintains that Susan has not suffered any pecuniary loss that would permit her to recover as a wrongful death beneficiary. *Id.* at 26. In its opinion, the trial court did not specifically discuss Susan, but said that Del Ciotto is "the sole beneficiary under the wrongful death cause of action." Trial Ct. Op. at 7-8.

Our disposition makes it unnecessary to resolve the issues involving Susan. But we note that, although the evidence suggests that Susan may be estranged from the family, there is nothing in the record to suggest that she has waived her right to recover on a claim for the wrongful death of her father. Nor does anything in the record support a requirement that Susan arbitrate that claim.

Given the importance of the individual rights being waived in an arbitration agreement, *see Taylor*, 147 A.3d at 508, we will not discount the fundamental significance of a signature in favor of contract language purporting to bind a signatory in an individual capacity unless a signature clearly signifies an intent to be so bound. Because Del Ciotto did not sign the arbitration agreement in his individual capacity, we hold that the trial court erred in requiring arbitration of the wrongful death claim.

**Application of Agreement to Decedent's Entire Period of Admission**

For his final issue, Del Ciotto argues that because the arbitration agreement was not signed until April 19, 2011, any of his claims based on acts or omissions occurring prior to that date do not fall within the scope of the Agreement. Del Ciotto's Brief at 44-46. ManorCare responds that the earlier events are covered under the Agreement's language stating that it applies to "[a]ny and all claims or controversies arising out of or *in any way* relating to this Agreement, this Admission Agreement or any of the Patient's stays at this Center . . . ." **See** Arbitration Agreement, 4/19/11, at 1, R. 319a (italics in original).

Del Ciotto waived this issue because he did not raise it before the trial court.[19] **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived

_____

[19] Appellate Rule 2117(c) requires an appellant to include in his Statement of the Case a statement of the place in the record where an issue was raised or preserved. **See also** Pa.R.A.P. 2119(e). Del Ciotto does not identify where in the 28,000 page record he preserved this argument. He did not make it in his opposition to ManorCare's petition to compel arbitration, response to

*(Footnote Continued Next Page)*

and cannot be raised for the first time on appeal"). We note that the trial court's Rule 1925(a) decision did not address this argument. Del Ciotto therefore is not entitled to relief on this issue.[20]

**Preclusive Effect of Arbitration Judgment on Claims of Testa**

Testa's last outstanding issue is that the trial court's entry of judgment against ManorCare improperly estops Testa from asserting on his cross-claim either that (1) only ManorCare was liable to Del Ciotto, or (2) ManorCare is jointly and several liable to Del Ciotto. Testa's Brief at 25-26.

ManorCare counters that Testa's claim is not yet ripe:

Here, [Testa] maintain[s] that the arbitrator's decision in favor of ManorCare will have an immediate and harmful effect on [his] ability to assert that ManorCare is solely liable for [Decedent's] alleged injuries. However, again, this concern is at best speculative, and is greatly outweighed by the policy favoring arbitration. In **Taylor**, the Court expressly declined to opine upon the potential preclusive effects of an arbitrator's decision on claims not subject to arbitration that are to be tried in court proceedings. **Taylor**, 147 A.3d at 511. Indeed, [Testa] go[es] to great lengths to argue that the arbitrator's decision does not have any preclusive effect on [Del Ciotto's] claims against [him]. As to whether the arbitrator's decision in this case has any preclusive effect with respect to [Testa] vis-à-vis ManorCare,

_(Footnote Continued)_ ————————————

ManorCare's preliminary objections, or opposition to ManorCare's petition to enter judgment on the arbitration award. We decline to search the record to see if it appears somewhere else.

[20] Were we to consider this issue, we would conclude that Del Ciotto is not entitled to relief. We interpret a contract to ascertain the intent of the parties, and "[w]hen the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." **Nicholas v. Hofmann**, 158 A.3d 675, 693 (Pa. Super. 2017). The Agreement unambiguously states that it covers all claims arising out of "any of [Decedent's] stays at" ManorCare. It therefore encompasses Decedent's stays at the facility prior to April 19, 2011.

that concern is readily addressed by an appropriate curative instruction by the trial judge. Indeed, in this case, a similar curative instruction will be necessary to address the joint tortfeasor settlements reached between the plaintiff and the multiple property defendants who were also defending survival and wrongful death claims.

Testa's Brief at 29.

The ripeness doctrine is "premised on policies of sound jurisprudence, namely, that the courts should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future." *Phila. Entm't & Dev. Partners, L.P. v. City of Philadelphia*, 937 A.2d 385, 392 (Pa. 2007). "The basic rationale underlying the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. Whether the time is right to adjudicate a claim is an issue that the Pennsylvania courts consider." *Id.* (citation omitted).

Here, the ripeness doctrine cautions against resolving Testa's claim at this time. We have vacated the judgment entered on the arbitration award with respect to the wrongful death claim and are remanding for further proceedings in which Del Ciotto may litigate the wrongful death claim against ManorCare before a jury. Whether Del Ciotto prevails in that litigation is likely to have a significant effect on what happens to the claims regarding Testa.

In addition, the trial court has not actually ruled on what effect the judgment on the arbitration award will have on Testa's cross-claim against ManorCare. It would be premature for this Court to resolve that question in the first instance based on a hypothetical event that may not occur. ***See Phila. Entm't & Dev. Partners***, 937 A.2d at 392. Until such time that the trial court rules adversely to Testa on this issue, we deem it prudent to conclude that Testa's claim is not yet ripe for adjudication. ***See id.***

\*     \*     \*

We vacate the judgment on the arbitration award, vacate the arbitration award to the extent it resolved Del Ciotto's wrongful death claim, remand for further proceedings on the wrongful death claim (including trial, if deemed necessary), vacate the order granting ManorCare's motion for judgment on the arbitration award, and affirm in part and reverse in part the order sustaining ManorCare's preliminary objections regarding arbitration.

Judgment vacated. Arbitration award vacated to the extent it resolved Del Ciotto's wrongful death claim. Order sustaining ManorCare's preliminary objections affirmed in part and reversed in part. Remanded for further proceedings, including trial, if necessary. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the opinion.

Judge Dubow did not participate in the consideration or decision of this case.

- 44 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/27/2017*