J-A25030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICK J. CARR, PATRICK K. CARR, AND DANIEL K. CARR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FIRST COMMONWEALTH BANK | : | |
| | : | No. 1130 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered August 25, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-13839

| | | |
|---|---|---|
| PATRICK J. CARR, PATRICK K. CARR, AND DANIEL K. CARR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| FIRST COMMONWEALTH BANK | : | No. 1180 WDA 2021 |

Appeal from the Order Entered August 25, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-013839

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: FEBRUARY 7, 2023**

In these cross-appeals,[1] Patrick J. Carr, Patrick K. Carr, and Daniel K.

Carr (the Carrs) and First Commonwealth Bank (FCB) appeal from the order

---

[1] This Court *sua sponte* consolidated these appeals as cross-appeals.  **See** Order, 10/14/21.  This Court subsequently designated the Carrs' appeal at 1180 WDA 2021 as the lead appeal, the Carrs as the appellants/cross-appellees, and FCB as the appellee/cross-appellant.  **See** Order, 10/28/21.

confirming in part and vacating in part an arbitration award in favor of FCB. In the appeal at 1180 WDA 2021, the Carrs challenge the trial court's denial of their motion to vacate the arbitration award, and in the cross-appeal at 1130 WDA 2021, FCB contends that the trial court erred by vacating the attorney's fees and costs portion of the arbitration award. We vacate and remand for further proceedings.

The underlying facts of this matter are well known to the parties. **See** Trial Ct. Op., 11/24/21, at 1-6. Briefly, on January 22, 2019, Patrick K. Carr and Daniel K. Carr (Sons) opened an account at the FCB in McKeesport, Pennsylvania naming their father, Patrick J. Carr (Father) as the beneficiary. The Carrs deposited a settlement check made out to Father into that account. Sons executed an account agreement at the time they opened the account. The account agreement refers to additional documents, which FCB provided to the Carrs in a folder. Subsequently, a civil judgment was entered against Daniel K. Carr in an unrelated matter. The judgment creditor garnished $38,046.97 from the Carrs' account to satisfy the judgment against Daniel K. Carr.

The Carrs filed a complaint against FCB alleging breach of contract, breach of fiduciary duty, and a violation of the Unfair Trade Practices and Consumer Protection Law. FCB filed preliminary objections in the nature of a petition to compel arbitration, asserting that the account agreement incorporated an agreement to arbitrate. In support of its preliminary objections, FCB filed the affidavit of Brittany Andreoli, a branch manager for

FCB in McKeesport. Andreoli Aff. at 1, R.R. at 110a.[2] In the affidavit, Andreoli stated that she provided the Carrs with a copy of the arbitration agreement with other account documents before they signed the account agreement. R.R. at 110a-11a. Andreoli also indicated that she specifically showed the arbitration agreement to the Carrs and explained that the account agreement stated that the account holders acknowledged receipt of the other documents. R.R. at 112. After Sons signed the account agreement, Andreoli placed the arbitration agreement and other documents related to the account in a red folder and handed it to one of the Sons. R.R. at 112a-13a.

The Carrs subsequently filed a response to FCB's first set of requests for admission and first set of interrogatories. Therein, the Carrs asserted that no one at the FCB branch provided them with a copy of the arbitration agreement or the folder containing the additional documents until after Sons had already signed the account agreement. Carrs' Resp. to Interrog. at 8 (unpaginated), R.R. at 169a. The Carrs further claimed that none of FCB's employees informed them that the documents folder contained an arbitration agreement. *Id.*

On February 4, 2020, the trial court sustained FCB's preliminary objections, ordered that this matter be transferred to arbitration, and stayed civil proceedings. The arbitrator ultimately found in favor of FCB and awarded FCB $10,245.32 in attorney's fees and costs. FCB then filed a petition to

_____

[2] We may cite to the reproduced record for the parties' convenience.

confirm the arbitrator's award and enter judgment against the Carrs. The Carrs filed a motion to vacate arbitration award arguing that they had not agreed to arbitrate, that the award should be set aside as unjust, inequitable, and unconscionable, and that the award of attorney's fees should be vacated. On August 25, 2021,[3] the trial court entered an order confirming the arbitration award in part and vacating the award of attorney's fees and costs to FCB.

FCB and the Carrs timely filed separate notices of appeal. Both FCB and the Carrs filed timely court-ordered Pa.R.A.P. 1925(b) statements. The trial court issued a Rule 1925(a) opinion addressing the parties' issues.

## Jurisdiction

Before we address the merits of the parties' claims, we first consider whether we have jurisdiction over this appeal. *See Massaro v. Tincher Contracting LLC*, 204 A.3d 932, 933 (Pa. Super. 2019) (explaining that "[w]e may raise whether this Court has jurisdiction *sua sponte*" (citation omitted)). "[T]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa. Super. 2018) (citation omitted).

---

[3] The trial court's order is dated August 24, 2021. However, according to the trial court docket entries, the trial court served the parties with notice of the order on the following day. *See* Pa.R.A.P. 108(a)(1) (providing that the date of entry of an order is the day the clerk of court mails or delivers copies of the order to the parties); *see also* Pa.R.C.P. 236. We have amended the captions accordingly.

Generally, "[f]or an order to be appealable, it must be (1) a final order, Pa.R.A.P. 341-342; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-312; or (3) a collateral order, Pa.R.A.P. 313." **Ashdale v. Guidi Homes, Inc.**, 248 A.3d 521, 525 (Pa. Super. 2021).

Rule of Appellate Procedure 311 provides, in relevant part:

> **(a) General rule.**—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> *     *     *
>
> (8) *Other cases.*—An order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties.

Pa.R.A.P. 311(a)(8); **see also Civan v. Windermere Farms, Inc.**, 180 A.3d 489, 492 (Pa. Super. 2018) (explaining that an order vacating an arbitration award and an order denying a petition to confirm an arbitration award were both appealable under Pa.R.A.P. 311(a)(8)).

42 Pa.C.S. § 7342,[4] which governs common law arbitration,[5] provides that Section 7320 (except for subsection (a)(4)) of the UAA, 42 Pa.C.S. § 7320, is applicable to common law arbitration proceedings. 42 Pa.C.S. § 7342(a). Section 7320 states, in relevant part, that "[a]n appeal may be taken from . . . a court order confirming or denying confirmation of an [arbitration] award" and "[t]he appeal shall be taken in the manner, within

---

[4] Subsequent to the Sons signing the account agreement with FCB, Section 7342 was amended. **See** 42 Pa.C.S. § 7342 (am. eff. July 1, 2019). We apply the prior version of Section 7342 which was in effect on the date the parties entered into the account agreement. **See** 42 Pa.C.S. § 7342 (eff. from Feb. 18, 1983 to June 30, 2019). Nevertheless, the prior version of Section 7342 is substantially similar to the current version. Because the revised sections do not affect our disposition of the instant case, we need not discuss the revisions here.

[5] At the time the Carrs entered into the account agreement with FCB, Pennsylvania law provided "two statutory schemes for arbitration of cases not filed in court. One, the Uniform Arbitration Act [(UAA)], 42 Pa.C.S. §§ 7301-7320, governs arbitrations under agreements that expressly provide that they are subject to that Act or any other similar statute." **Weinar v. Lex**, 176 A.3d 907, 913-14 (Pa. Super. 2017) (citation omitted and formatting altered). "All other arbitration agreements are conclusively presumed to be governed by what the Judicial Code calls "common law arbitration" under 42 Pa.C.S. §§ 7341-7342." **Id.** at 914 (citation omitted and formatting altered). Here, none of the parties contend that the arbitration agreement falls under the UAA, and nothing in the arbitration agreement indicates that it is subject to the UAA. **See** R.R. at 69a-71a. Therefore, the Judicial Code's common law arbitration provisions apply to the instant agreement. **See Weinar**, 176 A.3d at 913-14; **see also Moscatiello v. Hilliard**, 939 A.2d 325, 330 (Pa. 2007) (stating that "[b]ecause the agreements do not expressly provide for statutory arbitration, the agreements are conclusively presumed to be pursuant to the procedural rules of common law arbitration").

Additionally, although not applicable here, we note that after the parties signed the account agreement, a third statutory scheme for arbitration, the Revised Statutory Arbitration Act, 42 Pa.C.S. §§ 7321.1-7321.31, became effective, July 1, 2019.

the time and to the same extent as an appeal from a final order of court in a civil action." 42 Pa.C.S. § 7320(a)(3), (b). Additionally, Section 7342 provides that "[o]n application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration), **the court** shall enter an order confirming the award and **shall enter a judgment or decree in conformity with the order**." 42 Pa.C.S. § 7342(b) (emphases added).

Generally, "the entry of judgment is a prerequisite to our exercise of jurisdiction." **Mackall v. Fleegle**, 801 A.2d 577, 580 (Pa. Super. 2002) (citations omitted). However, this Court has also acknowledged that "there are some instances wherein a party has failed to enter judgment and our appellate courts may regard as done that which ought to have been done[,]" and consider the merits of an appeal instead of quashing. **Id.** (citations omitted). As stated above, after confirming a common law arbitration award, the **trial court**, not the parties, has the responsibility to enter judgment. **See** 42 Pa.C.S. § 7342(b).

Here, FCB filed a petition to confirm the arbitrator's award and enter judgment against the Carrs, and the Carrs filed a motion to vacate the arbitration award. The trial court entered an order confirming in part and vacating in part the arbitration award, but the trial court failed to enter judgment on its order. **See id.** Therefore, although the trial court failed to enter judgment as required by Section 7342, we will regard as done that which ought to have been done and address the parties' issues instead of remanding

for the entry of judgment or quashing these cross appeals. *See Mackall*, 801

A.2d at 580.

**The Carrs' Appeal**

On appeal, the Carrs present the following issues:

1. Whether the trial court committed an error of law when it found, as a matter of fact, based on the pleadings and briefs alone and without ordering discovery, that [the Carrs] had entered into a valid arbitration agreement despite the fact that the agreement in question was a separate document which was not signed nor initialed by either party and where the [Carrs'] pleadings denied knowledge of such agreement and denied that [FCB] had provided a copy of it to either account owner.

2. Whether the trial court committed an error of law when it sustained the private arbitrator's conclusion that a bank does not have a fiduciary duty to notify all holders of a joint account when there is a garnishment action against only one of the account holders.

3. Whether the trial court committed an abuse of discretion when it ruled that it was a legislative matter, and not a matter for the courts, to determine whether private arbitration in consumer cases should be disqualified due to the appearance of a conflict of interest where the arbitration service is a private, for-profit enterprise, the vendor/merchant paid substantially all of the arbitration fees and costs, and where the arbitrator and arbitration service can anticipate repeat business in the future from the vendor/merchant but not from the consumer.

The Carrs' First Step Brief at 4-5.

**Existence of Arbitration Agreement**

In their first issue, the Carrs argue that the trial court erred in concluding

that the parties had entered into an agreement to arbitrate. *Id.* at 16-26.

Specifically, the Carrs contend that there was no meeting of the minds

between the parties regarding an agreement to arbitrate. *Id.* at 16-17. The Carrs claim that FCB did not provide them with a copy of the arbitration agreement, they did not sign an arbitration agreement, FCB's terms and conditions do not refer to an arbitration agreement, and that the executed account agreement did not properly incorporate the arbitration agreement by reference. *Id.* at 22-24. The Carrs argue that an account agreement cannot incorporate an arbitration agreement by reference when the bank fails to deliver a copy of the arbitration agreement to the customer. *Id.* at 19. The Carrs further contend that some of the terms in the account agreement are not enforceable because they are not sufficiently conspicuous. *Id.* at 20-21, 23. Specifically, the Carrs refer to a provision stating that "[t]he undersigned personally and as, or on behalf of, the account owner(s) agree to the terms of, and acknowledge receipt of copy(ies) of, th[is] document and the following" and argue that it is the only language in the agreement that incorporates by reference other documents, such as the terms and conditions and the arbitration agreement, and was printed in small font. *Id.* at 23.

The Carrs additionally argue that the trial court erred in concluding that a valid and binding agreement to arbitrate existed without taking any evidence, either by holding an evidentiary hearing or issuing a rule to show cause and reviewing depositions. *Id.* at 16, 20, 24-26; *see also* the Carrs' Third Step Brief at 9-11. The Carrs also assert that the Andreoli affidavit that FCB submitted in support of its preliminary objections was not credible. The Carrs' First Step Brief at 24-25. Therefore, the Carrs conclude that the trial

court erred in sustaining FCB's preliminary objections and transferring this matter to arbitration without first resolving the factual dispute as to whether the parties agreed to arbitration.

"[O]ur standard of review of an order deciding a petition to compel [arbitration] is limited to determining whether the trial court's findings are supported by substantial evidence and whether it abused its discretion." ***Del Ciotto v. Pennsylvania Hosp. of the Univ. of Penn Health Sys.***, 177 A.3d 335, 348 (Pa. Super. 2017). To the extent that we review the language of the arbitration agreement, that is a question of law, therefore "our review of the trial court's decision is *de novo* and our scope is plenary." ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015) (citation omitted).

> Arbitration cannot be compelled in the absence of an express agreement to arbitrate. The touchstone of any valid contract is mutual assent and consideration. The issue of whether parties agreed to arbitrate is generally one for the court, not the arbitrators. When addressing that issue, courts generally apply ordinary state law contract principles, but in doing so, must give due regard to the federal policy favoring arbitration. If the court determines there is a valid agreement, it must then determine if the dispute in question is within the scope of the agreement.

***Id.*** (citations omitted and formatting altered). In other words, this Court employs "a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." ***Washburn v. Northern Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa. Super. 2015).

This Court has explained:

Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains. Once a person enters into a written agreement, he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing. It should not be assumed that the parties were ignorant of the meaning of the language employed.

*Nicholas v. Hofmann*, 158 A.3d 675, 693 (Pa. Super. 2017) (citations omitted and formatting altered).

The party seeking to compel arbitration bears the burden to demonstrate that a valid agreement to arbitrate exists and the dispute is within the scope of that agreement. *Bair*, 108 A.3d at 96 (applying the UAA); *see also Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995) (explaining that the party seeking to enforce a contract has the burden to prove the existence of the contract).

This Court has explained that Pennsylvania Rule of Civil Procedure 1028(c)(2)

states that the trial court "shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2). Furthermore, preliminary objections in the nature of a petition to compel arbitration filed pursuant to Pa.R.C.P. 1028(a)(6) cannot be determined from facts of record. In other words, a dispute raising an issue under Rule 1028(a)[(6)] cannot be resolved by reference to facts pled in the complaint. Additional evidence is required.

*Davis v. Ctr. Mgmt. Group, LLC*, 192 A.3d 173, 183 (Pa. Super. 2018) (some citations omitted and formatting altered).

In *Quiles v. Financial Exchange Co.*, 879 A.2d 281 (Pa. Super. 2005), the trial court conducted an evidentiary hearing[6] after which it concluded that there was no agreement to arbitrate between the employer and the employee because the employer never gave the employee a copy of the employee handbook which explained the employer's dispute resolution program (DRP) and arbitration provisions. *Quiles*, 879 A.2d at 283-84. In that case, the employee had signed a form acknowledging that she had received and read the employee handbook and agreed to be bound by its terms, which included "the dispute resolution program and [the] provision related to arbitration." *Id.* at 284 (formatting altered). On appeal, this Court held that although the employee signed that form, the employee "could not validly agree to arbitrate her claims without first having been given a copy of the [h]andbook, the only document that detailed and explained DRP and the company's proposed arbitration process. In essence, the terms of the process were never fully communicated to her." *Id.* at 288. Therefore, the *Quiles* Court affirmed the trial court's conclusion that the employee had never accepted the terms of the agreement to arbitrate. *Id.*; *cf. Nicholas*, 158 A.3d at 693.

---

[6] The trial court found the employee's testimony credible and the manager's testimony not credible. *Quiles*, 879 A.2d at 284 & n.6.

In *Stern v. Prudential Fin., Inc.*, 836 A.2d 953 (Pa. Super. 2003), this Court considered an appeal from an order sustaining preliminary objections and compelling the parties to arbitrate. *Stern*, 836 A.2d at 953. In *Stern*, the plaintiff filed an affidavit in which he stated that he and the defendant broker had agreed to waive the arbitration clause of his client agreement. *Id.* at 954. The defendant broker submitted two affidavits from its employees disputing the plaintiff's version of events. *Id.* However, the statements in the two employee affidavits also partially contradicted each other. *Id.* The trial court concluded that based on these three affidavits, there was no evidence that the broker agreed to waive the arbitration clause. *Id.* On appeal, the *Stern* Court explained that

> the resolution of preliminary objections . . . through an affidavit alone, rather than through depositions or interrogatories, while not recommended, [is] not error where the facts attested to in the affidavit were clear and specific. Here, however, while each affidavit is clear, each person tells a different version of what happened. There are no **undisputed** facts or language. . . .
>
> While we have found no cases where the effect of a waiver of an arbitration clause was determined on preliminary objections based merely on affidavits, cases involving summary judgment are instructive here. Our Court has said that the general rule that flows from *Nanty-Glo Borough v. American Surety Co.*, [163 A. 523 (Pa. 1932)], is that summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact. . . .
>
> Although the *Nanty-Glo* rule primarily has been applied in the context of summary judgment, there is no logical reason not to apply it to preliminary objections where there are disputed questions of fact as in this case. Once the facts were disputed in conflicting affidavits, [the trial court] should have ordered the

parties to present additional evidence by depositions, written interrogatories, or other discovery.

*Id.* at 955 (citations and quotation marks omitted, emphasis in original). Therefore, the **Stern** Court reversed the order compelling arbitration and remanded for resolution of the factual issue "at a hearing or [through] depositions." *Id.* (footnote omitted).

This Court employs "[w]ell-settled principles of contract interpretation" in construing an arbitration agreement. **Neuhard v. Travelers Ins. Co.**, 831 A.2d 602, 604 (Pa. Super. 2003). In **Provenzano v. Ohio Valley Gen. Hosp.**, 121 A.3d 1085 (Pa. Super. 2015), this Court explained that

> arbitration agreements are to be strictly construed and not extended by implication; and . . . when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.
>
> . . . [C]ourts should apply the rules of contractual construction[], adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.
>
> The court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Provenzano*, 121 A.3d at 1095 (citations omitted and formatting altered). As the *Neuhard* Court noted, the "scope or the application of the arbitration clause itself may be an arbitrable issue, which the arbitrators are to decide." *Neuhard*, 831 A.2d at 605 (citation omitted); *see also Provenzano*, 121 A.3d at 1095 (stating that "[i]f it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure are for the arbitrators to resolve" (citation omitted)).

"The terms of a contract include terms in documents that a signed contract document specifically and clearly identifies and expressly incorporates by reference." *In re Est. of Atkinson*, 231 A.3d 891, 899 (Pa. Super. 2020) (citations omitted) (concluding that an arbitration agreement was binding on the account holder trust because the account application expressly incorporated by reference the arbitration agreement, the account application stated the signer acknowledged receipt of a copy of the arbitration agreement, the trustee signed the application, and the trustee testified that he could not recall which documents he reviewed and received before signing the account application); *see also Nicholas*, 158 A.3d at 693.

Here, the trial court explained:

> [T]he [Carrs] continue to maintain that they never "willingly engaged", "agreed to", nor even considered entering an alternative dispute with FCB. As posed as this trial court's first decision, the Superior Court must first determine whether the parties present a binding arbitration agreement.

> \* \* \*

FCB presents as evidence of same, a signed document, entitled account agreement[.] (Exhibit 3, complaint). At the name request for "Owner/Signor Information 1" of the account, the name listed is as, "Patrick Kenneth Carr" and indicated at the relationship query as "primary". (Complaint, Ex. 3, p. 1). The ownership of the account is designated as "joint with survivorship (not as tenants in common)." (*Id.*). When questioned as to the beneficiary designation on this account agreement, the agreement is selected and determined to be a "revocable trust". (*Id.*). As to the account title and address, the account displays "Daniel K. Carr, Patrick Kenneth Carr ITF Patrick J. Carr".

FCB maintains that the "owners of the account are two [] of the plaintiffs, both Patrick Kenneth Carr and Daniel K. Carr (account agreement); distinguished on the agreement as 'owner/signer information 1' and 'owner/signer information 2'"; and that there are "no other owners of the account on the account agreement." Further, "the beneficiary of the account on the account agreement is the additional plaintiff, Patrick J. Carr, who is the father of the other two plaintiffs." And further, "[t]here are no other named beneficiaries of the account on the account agreement."

On page 1 of the account [agreement], a paragraph is entitled "signatures" and states:

> [t]he undersigned authorize the financial institution to investigate credit and employment history and obtain reports from consumer reporting agency(ies) also on them as individuals. Except as otherwise provided by law or other documents, each of the undersigned is authorized to make withdrawals from the account(s), provided the required number of signatures indicated above is satisfied. **The undersigned personally and as, or on behalf of, the account owner(s) agree[s] to the terms of, and acknowledge receipt of copy(ies) of, this document and the following:**
>
> Terms and Conditions
>
> Truth in Savings
>
> Funds Availability
>
> Electronic Fund transfer
>
> Privacy

**Arbitration Agreement**

(Complaint, Exhibit 3, p.1, emphasis added)[.]

The documents included in this particular Account Agreement are indicated by the use of an X in each corresponding box with the exception of "Arbitration Agreement." The words "Arbitration Agreement" are underlined and in larger font and found to be conspicuous by this writer in relation to all other terms of this agreement. The account agreement contains the purported signatures of "Daniel K. Carr", and "Patrick Kenneth Carr" as well as their respective birth dates.

Page 2 of the account agreement indicates as owner/signor information 2 as "Patrick Kenneth Carr" and further indicates the relationship as "joint". (*Id.* at [1-2]). The account is further described as a "Hometown Money Market with an initial deposit totaling $83,526.75." [*Id.* at 2.]

Further, paragraph 1 of the "Arbitration Provision" is entitled "Your Right to Reject Arbitration:"; and states:

> If you don't want this Arbitration Provision to apply to your account, you may reject arbitration by mailing us a written rejection notice which gives your name(s) and account number and contains a statement that you (both or all of you[, if more than one]) reject arbitration of disputes concerning your account[.]

[Arbitration Provision, ¶ 1, R.R. at 69a.]

The [Carrs] never objected to receipt of just one (1) copy of "paperwork" associated with this one (1) account; this was a signed agreement, to be treated "in law" as a contract. Because a party may choose either a lack of interest or indifference to the obligations assumed; a court cannot just choose to alleviate a party of those contracted obligations. Any other holding would promote lawlessness and chaos. Any argument as to the "lack of numbers of copies provided . . ." should be rejected for the [Carrs'] failure to object to same at the time of receipt of the "sole copy" or any time prior to the garnishment.

Pursuant to the parties' arbitration agreement, "arbitration is elected by giving a written demand for arbitration to the other party, by filing a motion to compel arbitration in court or by initiating an arbitration against the other party." (Arbitration

Agreement, [¶ 4, R.R. at 69a]). In accordance with that same agreement, "[i]f a party files a lawsuit in court asserting claim(s) that are subject to arbitration and if a court grants the other party's motion to compel arbitration of such claim(s), it will be the responsibility of the party prosecuting the claim(s) to commence the arbitration proceeding." [*Id.*]

Despite this provision, the [Carrs] sued . . . FCB, in the Court of Common Pleas [alleging breach of contract, breach of fiduciary duty, and a violation of the Unfair Trade Practices and Consumer Protection Law]. Prior to the filing of preliminary objections, counsel for the [Carrs] was notified by letter on October 29, 2019, entitled "written demand for arbitration" that any claim regarding the beneficiary of the account was to subject to an arbitration agreement. ([FCB's] Preliminary Objections, 11/4/19, Exhibit 1).

Trial Ct. Op. at 11-14 (footnotes and some citations omitted and formatting altered).

Here, the trial court based its conclusion that there was a valid agreement to arbitrate solely on the terms of the account agreement, which incorporates by reference several other documents including the arbitration agreement. *See id.* While parties to a contract may agree to incorporate by reference multiple documents into a single contract, a party cannot accept terms contained in other documents if that party did not receive them when he or she signed the contract. *Compare Est. of Atkinson*, 231 A.3d at 899 (trustee agreed to incorporate by reference the terms of an arbitration agreement into an account application that the trustee signed) *with Quiles*, 879 A.2d at 287-88 (employee did not agree to the terms of the arbitration provision even though employee signed a form acknowledging receipt of, and agreeing to the contents of, the employee handbook with an arbitration

- 18 -

provision because the trial court found that because the employer did not provide the employee with a copy of the handbook).

The record before this Court establishes a factual dispute as to whether the Carrs received a copy of the arbitration agreement prior to signing the account agreement. *Compare* R.R. at 110a-13a (Andreoli affidavit) *with* R.R. at 169a (Carrs' responses to FCB's interrogatories[7]). Specifically, Andreoli attested that she provided Sons with a copy of the arbitration agreement, among other documents, before they signed the account agreement and specifically informed them that the arbitration agreement affected their rights in the event of a dispute. *See* R.R. at 111a-12a. In their responses to FCB's interrogatories, the Carrs stated that FCB employees did not provide them with any other documents until after Sons had signed the account agreement, and that none of FCB's employees specifically mentioned an arbitration agreement. *See id.* at 169a. Based on our review of the record, we conclude there is a factual dispute as to whether the Carrs accepted the terms of the arbitration agreement. *See Quiles*, 879 A.2d at 283-88.

The trial court cannot rely solely on the Andreoli affidavit to resolve that factual dispute. *See Stern*, 836 A.2d at 955 (holding that a trial court may

---

[7] We note that answers to interrogatories must be verified. *See* Pa.R.C.P. 4006(a)(1). Verification means that a written statement is supported by oath or affirmation or is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities. *See* Pa.R.C.P. 76 (defining "verified"). Here, each of the Carrs signed a verification page indicating that their responses to the interrogatories were subject to the penalties of 18 Pa.C.S. § 4904. *See* R.R. at 199a-201a.

resolve a factual issue raised in preliminary objections through affidavits alone only when the facts set forth in the affidavits are clear, specific and undisputed; and applying the **Nanty-Glo** rule to the resolution of preliminary objections that raise factual issues). Therefore, the trial court abused its discretion in granting FCB's preliminary objections without receiving additional evidence to resolve the factual dispute regarding the existence of a valid agreement to arbitrate. **See Del Ciotto**, 177 A.3d at 348; **Stern**, 836 A.2d at 955.

For these reasons, we vacate the trial court's order confirming in part and vacating in part an arbitration award in favor of FCB and remand for further proceedings. On remand, the trial court is directed to conduct further proceedings to resolve the factual dispute as to whether a valid agreement to arbitrate exists.[8] **See Davis**, 192 A.3d at 183; **Stern**, 836 A.2d at 955.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023

---

[8] Because of our disposition, we need not address the Carrs' second and third issues and the issue FCB raises in its cross-appeal.